# Exhibit A

# SUMMONS
## COURT OF COMMON PLEAS
## LAKE COUNTY OHIO

MICHAEL SCHWARTZ
     Plaintiff

    VS.

JOHNSON & JOHNSON INC et al
     Defendant

Case Number: **18CV000285**
Judge EUGENE A. LUCCI

RECEIVED
MAR 05 2018
Department

To the following named DEFENDANT(S):
    JOHNSON & JOHNSON INC
    ONE JOHNSON & JOHNSON PLAZA
    NEW BRUNSWICK NJ 08933

    You have been named a Defendant in a complaint filed in the Lake County Court of Common Pleas, Lake County Courthouse, Painesville, Ohio.  A copy of the complaint is attached hereto.  The name and address of the plaintiff's attorney is:

    THOMAS J CONNICK
    25550 CHAGRIN BLVD. #101
    BEACHWOOD OH 44122

You are hereby summoned and required to do the following:

1.     **Within 28 days after service of this Summons upon you, serve a copy of an Answer to the Complaint on the Plaintiff's Attorney or on the Plaintiff, if he/she has no attorney of record;**

2.     **Within 3 days after you serve the Plaintiff or the Plaintiff's Attorney, file an Answer with your original signature with the Lake County Clerk of Court.**

    **Calculations of time are exclusive of the day of service.**

    If you fail to appear and defend, judgment by default will be rendered against you for the relief demanded in the complaint.

        Maureen G. Kelly
        Clerk, Court of Common Pleas
        Lake County, Ohio
        25 N. Park Place
        Painesville OH 44077

By *Mary Jo Stack*
        Deputy Clerk

February 20, 2018
ORTHO MCNEIL JANSSEN PHARMACEUTICALS INC    1000 US ROUTE 202 SOUTH
RARITAN NJ 08869

**COURT OF COMMON PLEAS**
**LAKE COUNTY OHIO**

RECEIVED
MAR 0 2 2018
Law Department

MICHAEL SCHWARTZ
       Plaintiff

    VS.

Case Number: **18CV000285**
Judge EUGENE A. LUCCI

JOHNSON & JOHNSON INC et al
       Defendant

To the following named DEFENDANT(S):
    ORTHO MCNEIL JANSSEN PHARMACEUTICALS INC
    1000 US ROUTE 202 SOUTH
    RARITAN NJ 08869
    You have been named a Defendant in a complaint filed in the Lake County Court of Common
Pleas, Lake County Courthouse, Painesville, Ohio.  A copy of the complaint is attached hereto.  The
name and address of the plaintiff's attorney is:

    THOMAS J CONNICK
    25550 CHAGRIN BLVD. #101
    BEACHWOOD OH 44122
    You are hereby summoned and required to do the following:

1.     **Within 28 days after service of this Summons upon you, serve a copy of an Answer to the Complaint on the Plaintiff's Attorney or on the Plaintiff, if he/she has no attorney of record;**

2.     **Within 3 days after you serve the Plaintiff or the Plaintiff's Attorney, file an Answer with your original signature with the Lake County Clerk of Court.**

    **Calculations of time are exclusive of the day of service.**
    If you fail to appear and defend, judgment by default will be rendered against you for the relief
demanded in the complaint.

            Maureen G. Kelly
            Clerk, Court of Common Pleas
            Lake County, Ohio
            25 N. Park Place
            Painesville OH 44077

            By *Mary Jo Stack*
              Deputy Clerk

February 20, 2018
JOHNSON & JOHNSON INC     ONE JOHNSON & JOHNSON PLAZA   NEW
BRUNSWICK NJ 08933

FILED

2018 FEB 14  PM 1: 21

MAUREEN G. KELLY
LAKE CO. CLERK OF COURT

**IN THE COURT OF COMMON PLEAS**
**LAKE COUNTY, OHIO**

| | |
|---|---|
| MICHAEL SCHWARTZ<br>1835 Ridgewick Dr.<br>Wickliffe, OH  44092 | **18CV000285**<br>**EUGENE A. LUCCI** |
| Plaintiff, ) | **COMPLAINT** |
| ) | |
| -vs- ) | |
| ) | *(JURY DEMAND ENDORSED HEREON)* |
| JOHNSON & JOHNSON, INC. )<br>One Johnson & Johnson Plaza )<br>New Brunswick, New Jersey 08933 )<br> )<br>And )<br> )<br>ORTHO MCNEIL-JANSSEN )<br>PHARMACEUTICALS, INC. )<br>aka JANSSEN PHARMACEUTICIA, )<br>INC. )<br>and/or JANSSEN, LP )<br>1000 U.S. Route 202 South )<br>Raritan, New Jersey 08869 )<br> )<br>Defendants. )| |

1.      Plaintiff, Michael Schwartz, by and through his undersigned counsel, brings this

action for negligence, negligence per se, gross negligence, breach of express warranty, breach of

implied warranty, fraudulent concealment, strict liability (failure to warn), negligent failure to

warn, negligent misrepresentation, and violation of the Ohio Consumer Sales Practices Act.

Plaintiff seeks compensatory, equitable, injunctive, punitive, and declaratory relief for the

debilitating, physical, psychological, pecuniary, and related injuries for which Defendants are

1

liable.  Based upon personal knowledge and upon the investigation of his counsel, Plaintiff respectfully alleges the following:

2.      This Court has jurisdiction of this matter pursuant to Ohio Revised Code § 2305.01.

3.      This Court has personal jurisdiction over all Defendants under Ohio Revised Code § 2307.382 because the causes of action alleged in this Complaint arise out of each Defendants' transacting business in Ohio, contracting to supply services or goods in this state, causing tortious injury by an act or omission in this state, causing tortious injury in Ohio because the Defendants regularly do or solicit business or engage in a persistent course of conduct or derive substantial revenue from goods used or consumed or services rendered in this state. Defendants have purposely directed their actions towards Ohio and/or have the requisite minimum contacts with Ohio to satisfy any statutory or constitutional requirements for personal jurisdiction.

4.      Venue is proper in Lake county, Ohio, pursuant to Ohio Civil Rule 3(B)(3), (6), and (7), and because most, if not all of the facts giving rise to the claims that are the subject matter of this Complaint occurred in Lake County, Ohio and Plaintiff resides in Lake County, Ohio.

5.      Drug companies, such as Defendants, should never place their desire for profits above the health and well-being of their customers or the communities where those customers live. Because they know prescribing doctors and other health-care providers rely on drug companies' statements in making treatment decisions, drug companies must tell the truth when marketing their drugs and ensure that their marketing claims are supported by science and medical evidence. Defendants broke these simple rules.

6.      This action arises in connection with Defendants' unlawful marketing and promotion of a defective and unreasonably dangerous prescription medication, Risperdal, which was taken by Plaintiff Schwartz from approximately September 2016 to April 2017.  As a direct

2

and proximate result of Defendants' unlawful actions, Plaintiff Schwartz suffered serious and debilitating physical, psychological, and pecuniary and related injuries, including permanent disfigurement, significant and severe weight gain, damage to his sexual and endocrine functions, including, but without limitation, shrinking of his genitals (penis). Plaintiff Schwartz also suffers from gynecomastia (enlargement of a man's breast), incontinence, including, but not limited to uncontrolled bowel movements, fatigue, gastrointestinal pain, medical expenses, lost and/or diminished earning capacity and psychological trauma. Furthermore, as a proximate result of Defendants' unlawful actions, Plaintiff Schwartz suffered various damages, including, but not limited to, severe emotional distress, lost wages, inconvenience, medical expenses, and other damages. Plaintiff seeks, *inter alia*, compensatory, equitable, injunctive, punitive, and declaratory relief for his injuries.

## BACKGROUND

7.     Plaintiff, Michael Schwartz, is a thirty-year old male, and is a citizen of the City of Wickliffe, County of Lake, and State of Ohio.

8.     At all times relative to the acts alleged herein, Plaintiff resided in the geographic confines of the Lake County Court of Common Pleas.

9.     Plaintiff Schwartz resides with his mother, Debbie Schwartz and father, Fred Schwartz.

10.     In or about 2008, at the age of twenty, Plaintiff Schwartz began experiencing behavioral and psychological issues.

11.     In or about September of 2016, Plaintiff Schwartz was prescribed and began to use Risperdal; Plaintiff continued to use Risperdal until approximately April of 2017.

3

12.     Both during and after the time period that Plaintiff Schwartz took Risperdal from 2016 to 2017, he is experiencing ongoing and continuing numerous, serious side effects, including significant weight gain, fatigue, enlarged nipples, development of enlarged breasts, gastrointestinal pain, incontinence, and uncontrolled bowel movements, and shrinking of his genitals.  Plaintiff Schwartz continues to experience these side effects even since the discontinuance of the use of Risperdal in approximately April of 2017.

13.     Defendant, Johnson & Johnson, Inc. ("J&J") is a New Jersey corporation with its principal place of business in New Jersey. Defendant J&J manufactures, markets, and sells a wide-range of pharmaceuticals, medical and related products, including Risperdal.  J&J is qualified to do business in Ohio and does business in Ohio.

14.     Defendant, Ortho McNeil-Janssen Pharmaceuticals, Inc., also known as Janssen Pharmaceutical, Inc., and/or Janssen, LP ("OMJPI"), is a Pennsylvania corporation with its principal place of business in New Jersey.

15.     Defendants, John Does 1 – 10 are affiliated companies, subsidiaries, sister companies, directors, officers, managers, employees, agents, contractors, subsidiaries, and/or closely related entities of the named and/or their subsidiaries, who, at all times relevant to the allegations herein, acted within the scope of their authority and on behalf of the other Defendants.

16.     Upon information and belief, all Defendants have and/or do conduct business in the State of Ohio and County of Lake.

**FACTUAL ALLEGATIONS**

17.     At all times relevant hereto, Defendants owned the patent on the prescription drug, Risperdal, which was approved by the Federal Food & Drug Administration ("FDA") in or around 1993.

18.     Defendants did during such times make, manufacture, create, design, test, label, sterilize, distribute, and supply, prescribe, market, sell, advertise, purport to warn, purport to consult, and otherwise distribute in interstate commerce and in the State of Ohio, the product known as Risperdal.

19.     Defendants made and continue to make false and misleading statements about the safety, cost, use, and effectiveness of Risperdal and improperly influence doctors and officials to promote and prescribe the medication.

20.     In October 2014 the *Journal of Systematic Reviews* published a paper finding "SGAs[1] elevate serum prolactin via dopamine antagonism…[S]tudies have shown that risperidone[2], for example, may elevate prolactin to a greater extent and more frequently that other SGAs in pediatric and adult populations. Prolonged and substantial elevation of prolactin is associated with a number of adverse effects. Direct effects of elevated prolactin on breast tissue may lead to galactorrhea in women and gynecomastia in men."

21.     In 2015 the *Journal of Child and Adolescent Psychopharmacology* concluded that Risperidone is associated with an increase with the risk of gynecomastia in adolescent and young adult males.[3]  Defendants failed to warn and/or disclose this (among other things).

22.     Documents released in connection with settlements, judgments and plea agreements reached with the Department of Justice and various state Attorneys General reflect that the Defendants have concealed and/or minimalized Risperdal's side effects and exaggerate Risperdal's effectiveness.

---

[1] Second Generation Antipsychotics.
[2] i.e. Risperdal.
[3] https://i3jl420on823u34pi27m8yq1-wpengine.netdna-ssl.com/wp-content/uploads/risperidone-risk-study-2015-copy.pdf

5

23.     At all times relevant herein, Risperdal was widely and falsely advertised and promoted by Defendants as a safe and effective treatment of schizophrenia and bipolar disorder and was falsely promoted by Defendants as safe and effective treatment for non-FDA approved uses, such as for depressive symptoms, PTSD and MDD, and that Defendants minimized and/or concealed the risk posed to patients taking Risperdal as prescribed.

24.     That all times relevant hereto, Defendants knew that the product Risperdal was defective, and that Risperdal was likely to cause hyperprolactinemia, gynecomastia, diabetes, excessive weight gain, gastrointestinal problems, genital shrinkage, urinary incontinence, fecal incontinence, and other medical problems.

25.     Defendants continued to promote Risperdal as safe and effective despite patient reports of adverse events, FDA warnings regarding Risperdal's dangers, and FDA requests to modify the warning labels.

26.     As a direct and proximate result of ingesting Risperdal/Risperidone, Plaintiff Schwartz has suffered severe physical and emotional injuries, including, but not limited to hyperprolactinemia, gynecomastia, excessive weight gain, gastrointestinal problems, urinary incontinence, fecal incontinence, shrinkage of his male genitals, and other medical problems, including fatigue, and other emotional problems.

27.     Defendants failed to provide sufficient warnings and instructions that would have put Plaintiff on notice of the dangers and adverse effects of Risperdal and/or Risperidone, including, but not limited to hyperprolactinemia, gynecomastia, diabetes, excessive weight gain, gastrointestinal problems, urinary incontinence, fecal incontinence, shrinking of his genitals, and other medical problems.

28.    Risperdal/Risperidone were defective as marketed due to inaccurate warnings, instructions, and labelling, in light of Defendants' knowledge the product was likely to cause hyperprolactinemia, gynecomastia, diabetes, excessive weight gain, gastrointestinal problems, urinary incontinence, fecal incontinence, shrinking of genitals, and other medical problems.

29.    Defendants manufactured and promoted Risperdal/Risperidone for sale within the State of Ohio and elsewhere.

30.    Defendants promoted Risperdal to physicians and consumers within the State of Ohio and elsewhere.

31.    Defendants knew or should have known that their false advertising and unlawful marketing activities in violation of federal and state laws, was likely to and did, in fact, cause physicians and consumers to rely on said advertising and marketing and to take Risperdal/Risperidone without adequate knowledge of the risks associated therewith.

32.    Defendants conducted an organized, coordinated, intentional and deliberate campaign to unlawfully market and promote off-label use of Risperdal/Risperidone in spite of the risks associated therewith.

33.    As a result of Defendants' unlawful actions, Risperdal became Defendants' best-selling drug.

34.    Defendants sought to create the image, impression and belief among consumers and physicians that the use of Risperdal/Risperidone was safe for humans, including young adults, and that it had fewer side effects and adverse reactions than other medications; Defendants engaged in this unlawful behavior despite knowing that their representations were false and there was no reasonable basis to believe them to be true.

7

35.      Defendants purposefully concealed, obviated, down-played, and understated the health hazards and risks associated with Risperdal and actively promoted its all-label use by young adults in violation of federal and Ohio state law.

## CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION
### NEGLIGENCE/NEGLIGENCE *PR SE*/GROSS NEGLIGENCE

36.      Plaintiff hereby incorporates by reference all preceding paragraphs as if fully set forth herein.

37.      Under Ohio law, to establish actionable negligence, Plaintiff must show, in addition to the existence of a duty, a breach of that duty, and injury resulting proximately therefrom. All such elements exist here.

38.      Defendants have a duty to Plaintiff to exercise reasonable care in manufacturing, marketing, selling, warning, and distributing highly dangerous drugs, such as Risperidone.

39.      Defendants have a duty to exercise reasonable care under the circumstances. This includes a duty not to cause foreseeable harm to others. In addition, these Defendants, having engaged in conducted that created an unreasonable risk of harm to others, had, and still have, a duty to exercise reasonable care to prevent the threatened harm.

40.      Defendants are part of a limited class of registrants authorized to legally market, sell, and distribute controlled substances, which places them in a position of great trust and responsibility *vis-a-vis* Plaintiff. Their duty cannot be delegated.

41.      Defendants acted with actual malice in breaching their duties, i.e., they have acted with a conscious disregard for the rights and safety of other persons, and said actions have a great probability of causing substantial harm.

8

42.     The foreseeable harm from a breach of these duties includes the permanent side-effects suffered by Plaintiff as alleged herein.

43.     Defendants conduct described herein demonstrates wanton, willful, or reckless conduct affecting the rights of others, such as Plaintiff, and justifies an award of punitive damages.

44.     These Defendants' breach of the duties described herein directly and proximately resulted in the injuries and damages alleged by Plaintiff.

45.     Defendants knew, or should have known, that there was a foreseeable risk that Plaintiff would suffer harmful side-effects from Risperdal/Risperidone including, without limitation, those side-effects outlined herein, and the resultant damages alleged herein.

46.     Defendants failed to act reasonably or with ordinary prudence, thereby breaching the duty of care owed to Plaintiff Schwartz.

47.     It was reasonable for Plaintiff to rely upon Defendants' representations as to the safety and effectiveness of Risperdal/Risperidone, and Plaintiff did so rely.

48.     But for Defendants' breach of duty owed to Plaintiff and Plaintiff's detrimental reliance thereon, Plaintiff would not have suffered the harm alleged herein.

49.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff has suffered and will continue to suffer permanent injuries, severe emotional distress, mental anguish, economic losses, and other damages, for which he is entitled to compensatory, equitable and other lawfully available relief in an amount to be proven at trial, in excess of $25,000.00.

## SECOND CAUSE OF ACTION
## BREACH OF EXPRESS WARRANTY

50.     Plaintiff hereby incorporates by reference all preceding paragraphs as if fully set forth herein.

51.     At all times mentioned herein, Defendants expressly warranted to Plaintiff, by and through statements made by Defendants and/or their authorized agents or sales representatives, orally and in publications, package inserts, and other written materials intended for physicians, medical patients, and the general public, that the aforementioned products were safe, effective, fit, and proper for their intended use.

52.     In utilizing the aforementioned products, Plaintiff relied on the skill, judgment, representations and foregoing express warranties of the Defendants and each of them.   Said warranties and representations were false in that the aforementioned products were unsafe and unfit for the uses for which they were intended.

53.     As a result of the foregoing express warranties by the Defendants, Plaintiff suffered injuries and damages as alleged herein, and in an amount to be proven at trial in excess of $25,000.

### THIRD CAUSE OF ACTION
### BREACH OF IMPLEID WARRANTY

54.     Plaintiff hereby incorporates by reference all preceding paragraphs as if fully set forth herein.

55.     At all times mentioned herein, Defendants impliedly warranted to Plaintiff, by and through statements made by Defendants, or their authorized agents or sales representatives, orally and in publications, package instructions and other written materials intended for physicians, medical patients, and the general public, that the aforementioned products were safe, effective, fit, and proper for their intended use.

56.     In utilizing the aforementioned products, Plaintiff relied on the skill, judgment, representations and foregoing implied warranties of the Defendants, and each of them.   Said

10

warranties and representations were false in that the aforementioned products were not safe and were unfit for the uses they were intended.

57.     As a result of the foregoing breach of implied warranties by the Defendants, Plaintiff suffered injuries and damages as alleged herein, and in an amount to be proven at trial in excess of $25,000.00.

**FOURTH CAUSE OF ACTION**
**FRAUDULENT CONCEALMENT**

58.     Plaintiff hereby incorporates by reference all preceding paragraphs as if fully set forth herein.

59.     Defendants and Plaintiff were in a special relationship wherein Defendants manufactured, supplied, and actively promoted a dangerous and untested prescription drug to young adults.

60.     Defendants intentionally concealed that they had not conducted proper tests and did not know of the risks and side effects of Risperdal, and thereby intentionally failed to disclose important facts to Plaintiff.

61.     Defendants were in the unique position to know that they did not have generally accepted test results of the effects of Risperdal on young adults.

62.     Plaintiff did not know that Defendants' lacked generally accepted test results about the potential risks and side effects of young adults taking Risperdal.

63.     Defendants intended to deceive Plaintiff by concealing these facts.

64.     Plaintiff reasonably relied on Defendants' assertions as passed on by his doctors.

65.     Plaintiff was harmed by Defendants' fraudulent concealment.

66.     Defendants' concealment was a substantial factor in causing Plaintiff's harm.

67. As a direct and proximate result of Defendants fraudulent concealment, Plaintiff has been damaged as alleged herein, and in an amount to be proven at trial in excess of $25,000.00.

## FIFTH CAUSE OF ACTION
## STRICT PRODUCTS LIABILITY – FAILURE TO WARN

68. Plaintiff hereby incorporates by reference all preceding paragraphs as if fully set forth herein.

69. Defendants manufactured and distributed Risperdal.

70. Risperdal had potential risks and side-effects for younger adults, outlined herein, that were known in light of scientific medical knowledge that was generally accepted in the scientific and/or medical community at all relevant times when Defendants were manufacturing, marketing, and distributing Risperdal to physicians for off-label use with young adults.

71. The potential risks and side-effects presented a substantial danger when Risperdal is used or misused in an intended or reasonably foreseeable way.

72. The potential risks and side-effects are not the type of risks or side effects that ordinary consumers would recognize.

73. The potential risks and side effects were ignored by Defendants when advising doctors of the benefits of Risperdal in young adult men.

74. Due to the strict requirements established by the FDA for approving antipsychotic prescription drugs for any specific use, particularly in young adults, more susceptible to adverse effects, Defendants knew that Risperdal was not approved for use in young adults, and yet they pushed this off-label use anyway – this is the risk amelioration intended by compliance by the FDA regulations for approval of these types of drugs in all persons, especially young adults.

75. Defendants knew at all times that Risperdal was not approved by the FDA for use in or by young adults.

12

76.     Defendants failed to adequately warn of the potential risks and side effects.

77.     Plaintiff was harmed.  The lack of sufficient instructions and warnings were substantial factors in causing Plaintiff's harm.

78.     As a direct and proximate result of Defendants' failure to warn, Plaintiff has been damaged as alleged herein, and in an amount to be proven at trial in excess of $25,000.00.

## SIXTH CAUSE OF ACTION
## NEGLIGENCE – FAILURE TO WARN

79.     Plaintiff hereby incorporates by reference all preceding paragraphs as if fully set forth herein.

80.     Plaintiff claims that Defendants were negligent by not using reasonable care to warn about Risperdal's dangerous condition or about facts that Risperdal is likely to be dangerous.

81.     Defendants manufactured and distributed Risperdal from 1993 to the present day.

82.     Defendants knew or reasonably should have known that Risperdal was dangerous or was likely to be dangerous when used or misused in a reasonably foreseeable manner.

83.     Defendants knew or reasonably should have known that users would not realize the danger.

84.     Defendants failed to adequately warn of the danger or instruct on the safe use of Risperdal.

85.     A reasonable manufacturer of Risperdal, under the same or similar circumstances, would have warned of the danger or instructed on the safe use of Risperdal.

86.     Plaintiff used Risperdal as instructed.  Plaintiff was harmed.

87.     Defendants' failure to warn was a substantial factor in causing Plaintiff's harm.

88.     Defendants had a common law duty to warn Plaintiff regarding the risks of using Risperdal. Defendants breached that duty, thus directly and proximately causing Plaintiff damages as alleged herein, and in an amount to be proven at trial in excess of $25,000.00.

**SEVENTH CAUSE OF ACTION**
**NEGLIGENT MISREPRESENTATION**

89.     Plaintiff hereby incorporates by reference all preceding paragraphs as if fully set forth herein.

90.     Defendants represented to Plaintiff, doctors, and the medical community that Risperdal was safe for young adults.

91.     Defendants' representations were not true, as Defendants had no approved use from the FDA for the use of Risperdal in young adults, and either did not know of the harm because they failed to adequately test the drug in young adults or knew of the risks and side effects but marketed it anyway.

92.     Regardless of whether Defendants honestly believed that the representations were true, Defendants had no reasonable grounds for believing the representations were true when they made the statements.

93.     Defendants intended for the Plaintiff to rely on their representations.

94.     Plaintiff reasonably relied on Defendants' representations.

95.     Plaintiff's reliance on Defendants' representations was a substantial factor in causing his harm.

96.     Defendants breach of their duty to make and offer truthful representations regarding the use of Risperdal directly and proximately caused Plaintiff damages as alleged herein, and in an amount to be proven at trial in excess of $25,000.00.

14

## EIGHTH CAUSE OF ACTION
## VIOLATION OF THE OHIO CONSUMER SALES PRACTICES ACT O.R.C.
## § 1345.01, *ET SEQ.* ("OCSPA")

97.     Plaintiff hereby incorporates by reference all preceding paragraphs as if fully set forth herein

98.     This cause of action, brought under the OCSPA, seeks actual, statutory, and treble damages, and declaratory judgment that Defendants have violated the OCSPA, and an injunction enjoining Defendants' misrepresentations described in this Complaint.

99.     Plaintiff is a "consumer" as defined under the OCSPA.

100.    Defendants are "suppliers" as defined under the OCSPA.

101.    Plaintiff engaged in a "consumer transaction" with Defendants as defined under the OCSPA.

102.    The OCSPA prohibits, in connection with consumer transactions, unfair, deceptive, or unconscionable consumer sales practices that mislead consumers about the nature of the product they are receiving. Specifically, the OCSPA prohibits sellers from representing: that the subject of a consumer transaction has sponsorship, approval, performance characteristics, accessories, uses, or benefits that it does not have. *R.C. 1345.02(B)(1).*

103.    In addition, § 109:4-3-10 of the Ohio Administrative Code, interpreting the OCSPA, makes it a deceptive act or practice for a supplier, in connection with a consumer transaction to "[m]ake any representations, claims, or assertions of fact, whether orally or in writing, which would cause a reasonable consumer to believe such statements are true, unless, at the time such representations, claims or assertions are made, the supplier possesses or relies upon a reasonable basis in fact such as factual, objective, quantifiable, clinical or scientific data or other

15

competent or reliable evidence which substantiates such representations, claims, or assertions of fact."

104.   The OCSPA provides "No supplier shall commit an unfair or deceptive act or practice in connection with a consumer transaction. Such an unfair or deceptive act or practice by a supplier violates this section whether it occurs before, during, or after the transaction." Ohio Revised Code § 1345.02(A).

105.   The OCSPA further states:

Without limiting the scope of division (A) of this section, the act or practice of a supplier in representing any of the following is deceptive: (1) That the subject of a consumer transaction has sponsorship, approval, performance characteristics, accessories, uses, or benefits that it does not have; (2) That the subject of a consumer transaction is of a particular standard, quality, grade, style, prescription, or model, if it is not;…(5) That the subject of a consumer transaction has been supplied in accordance with a previous representation, if it has not, except that the act of a supplier in furnishing similar merchandise of equal or greater value as a good faith substitute does not violate this section;…(9) That the supplier has a sponsorship, approval, or affiliation that the supplier does not have[.]

*Ohio Revised Code § 1345.02(B)*

106.   It is a deceptive act or practice in violation of the OCSPA for a supplier, in connection with a consumer transaction to "[m]ake any representations, claims, or assertions of fact, whether orally or in a writing, which would cause a reasonable consumer to believe such statements are true, unless, at the time such representations, claims or assertions are made, the supplier possesses or relies upon a reasonable basis in fact such as factual, objective, quantifiable, clinical or scientific data or other competent or reliable evidence which substantiates such representations, claims, or assertions of fact." *See* Ohio Administrative Code § 109:4-3-10.

107.   Violations of the OCSPA do not require privity of contract.

108.   Further, under O.R.C. § 1345.07(A)(3)(c), the following acts are deemed to be deceptive pursuant to cases located within the Attorney General's Public Inspection File ("PIF")

16

a. Making any express or implied statement in connection with the marketing or advertisement of any product that is false, or has the capacity, tendency, or effect of deceiving or misleading consumers; or omitting any material information such that an express or implied statement deceives or tends to deceive consumers. *State of Ohio ex rel. Rogers v. Airborne Health, Inc.* Case No. 08-CVH-1217848 (Ct. Cmmn. Pleas, Franklin Cty).

b. Making any representation(s), in connection with the marketing or advertising of a product, about research that has been performed, including but not limited to any representation that a product has been clinically tested unless at the time the claim is made, competent and reliable scientific evidence exists substantiating such claim. *Airborne Health, supra.*

c. Making, in connection with the marketing or advertising of a product...any statements or representations concerning a product that materially contradict or conflict with any other statements or representations the Defendants made about such product and render such statements or representations misleading and/or deceptive. *Airborne Health, supra.*

d. Making, or causing to be made, any written or oral claim that is false, misleading, or deceptive. *State of Ohio ex rel. Michael DeWine v. Amgen Inc.,* Case No. 15CV7216 (Ct. Cmmn. Pleas, Franklin Cty).

e. Representing that any product has any sponsorship, approval, characteristics, ingredients, uses, benefits, quantities, or qualities that it does not have. *Amgen Inc., supra.*

17

f.   Making in a promotional context an express or implied representation, not approved or permitted for use in the labeling or under the FDCA, that a product is better, more effective, useful in a broader range of conditions or patients, safer, has fewer, or less incidence of, or less serious side-effects or contraindications than has been demonstrated by competent and reliable scientific evidence, whether or not such express or implied representation is made by comparison with another drug or treatment, and whether or not such a representation or suggestion is made directly or through the use of published or unpublished literature, a quotation, or other reference. *Amgen Inc., supra.*

g.   Misleadingly presenting favorable information or conclusion(s) from a study that is inadequate in design, scope, or conduct to furnish significant support for such information or conclusion(s) for information that may be material to an HCP prescribing decision when presenting information about a clinical study regarding a product. *Amgen, Inc.*

h.   Making, or causing to be made, any written or oral or claim, directly or by promotional speakers, that is false, misleading, or deceptive regarding any FDA-approved product, including but not limited to, any false, misleading, or deceptive claim when comparing the efficacy or safety of two products. *State of Ohio, ex rel. Michael DeWine v. Pfizer, Inc.*, Case No. 12 CV 15188 (Ct. Cmmn. Pleas, Franklin Cty.).

i.   Making any claim, directly or by promotional speakers, comparing the safety or ethnicity of a product to another product when the claim is not supported by substantial evidence. *Pfizer, Inc*

18

j.  Making any claim, directly or by promotional speakers, that contradicts or minimizes a precaution, warning or adverse reaction as described in product labeling. *Pfizer, Inc.*

109.    The OCSPA also prohibits suppliers from committing an "unconscionable act or practice in connection with a consumer transaction," whether "[s]uch an unconscionable act or practice...occurs before, during, or after the transaction." *Ohio Revised Code § 1345.03.*

110.    Under the OCSPA:

In determining whether an act or practice is unconscionable, the following circumstances shall be taken into consideration:

(1) Whether the supplier has knowingly taken advantage of the inability of the consumer reasonably to protect the consumer's interests because of the consumer's physical or mental infirmities, ignorance, illiteracy, or inability to understand the language of an agreement;

(2) Whether the supplier knew at the time the consumer transaction was entered into that the price was substantially in excess of the price at which similar property or services were readily obtainable in similar consumer transactions by like consumers;

(3) Whether the supplier knew at the time the consumer transaction was entered into of the inability of the consumer to receive a substantial benefit from the subject of the consumer transaction; ...

(6) Whether the supplier knowingly made a misleading statement of opinion on which the consumer was likely to rely to the consumer's detriment[.]
*Ohio Revised Code § 1345.03(B).*

111.    Defendants are "suppliers" that must abide by the OCSPA.

112.    In overstating the benefits of and the evidence for the use Risperdal and understating its serious risks, as alleged herein and suffered by Plaintiff, Defendants have engaged in misrepresentations, deception, and knowing omissions of material fact.

113.    As alleged herein, each Defendant, at all times relevant to this Complaint, violated the OSPA by making deceptive representations by the use of Risperdal.  Each Defendant also omitted or concealed material facts and failed to correct prior misrepresentations and omissions

19

about the risks and benefits of Risperdal. Each Defendants omission rendered even there slimly truthful statements about Risperdal deceptive.

114. As a direct and proximate result of Defendants violations of the OCSPA, Plaintiff suffered injury and actual economic damages, including damages for direct, incidental, or consequential pecuniary losses, and in an amount to be proven at trial in excess of $25,000.00.

115. Defendants knowingly committed the acts and practices constituting OCSPA violations as alleged herein and said violations have previously been determined to be violations of the OCSPA.

WHEREFORE, Plaintiff requests the following relief:

    a. Compensatory and/or consequential damages in an amount in excess of $25,000.00 sufficient to fairly and completely compensate for all damages alleged herein;

    b. A finding that by the acts alleged herein Defendants violated the Ohio Consumer Sales Practices Act, R.C. 1345.01 *et seq*.;

    c. An injunction permanently enjoining Defendants from engaging in the acts and practices that violation the Ohio Consumer Sales Practices Act;

    d. An award of three times Plaintiff's actual damages in accordance with the Ohio Consumer Sales Practices Act;

    e. Punitive Damages in excess of $25,000.00;

    f. For costs, filing fees, pre and post judgment interest, expenses, and attorney's fees; and

    g. For all other relief at law or in equity, as deemed just by this Court.

**JURY DEMAND**

Plaintiff demands a trial by jury in this action.

Respectfully submitted,

Thomas J. Connick, Esq. (0070527)
Connick Law LLC
25550 Chagrin Blvd., Suite 101
Beachwood, Ohio 44122
PH: (216) 364-0512 | FX: (216) 609-3446
tconnick@connicklawllc.com
*Attorney for Plaintiff*

21

FILED

**COMMON PLEAS COURT**
**LAKE COUNTY, OHIO**
Case Designation Form

2018 FEB 14 PM 1: 2 **For all cases except**

MAUREEN G. KELLY
Michael Schwartz

LAKE CO. CLERK OF COURT    Case No

Johnson & Johnson, Inc., et al    Judge

**18CV000285**

**EUGENE A. LUCCI**

Per LOC R. II (C)(3), refiling of cases previously dismissed under Civ. R. 41 must have a designation upon the face of the complaint that the action is being refiled. The word "REFILING" must appear in upper case letter under the word "COMPLAINT". Directly beneath the word "REFILING" the complaint shall identify the case number of this dismissed action. **Former Case no.** _____

### Case Categories (Mark one category only)

**Administrative Appeal** (Specific ORC Sec.)     Section _____

**Consumer Sales Practices:** Actions commenced under applicable section of ORC Chapters: 109, 1315, 1317, 1321, 1322, 1333, 1334, 1345, 1349, 3953, 4505, 4549, 4710, 4712, 4719, 4775, 4905 or 5311

_____ **Contract or Quasi Contract**
_____ **Criminal**
_____ **Declaratory Judgment**
*See Foreclosure Case Designation Form*
_____ **Foreign Judgment**
_____ **Malpractice** (specify) _____
_____ **Credit Card** (CI)
_____ **Personal Injury**
_____ **Product Liability**
_____ **Professional Tort**
_____ **Provisional Remedy** (Replevin, Attachment, Garnishment)
_____ **Workers Compensation**
___✓___ **Other Tort** *Negligence, Fraud, Consumer Sales Act.*
_____ **Other Civil** _____

The designation "money only" may not be used if one of the above specific categories is applicable. Further, the caption shall note any statutory provision that is unique to the particulate cause and controls the time within which the case is to proceed, once filed. (EX. Miscellaneous – Contest of Election (ORC Section 3515.10 – Hearing within 30 days.)

Revised Code Section unique to this particular cause which controls the time within which the case is to proceed: 2305.01 _____

_____ **Signature**

Thomas J. Connick (0070527)     **Printed name & Registration No.**

Connick Law, LLC     **Firm name**

25550 Chagrin Blvd., #101, Beachwood, OH 44122     **Address**

(216) 364-0512     **Phone number**

revised 9/27/13 nr

# MAUREEN G. KELLY

## CLERK OF COURTS

### Lake County Common Pleas Court

### <u>ATTENTION ALL PARTIES TO THE CASE</u>

**Whether you are represented by an Attorney or representing yourself in this Legal action, LAKE COUNTY LOCAL COURT RULES require that all participants familiarize themselves with, and follow the requirements of each court.**

**Pre-trial orders and procedures are available on our website at**

### <u>www.lakecountyohio.gov/coc</u>

### Select DOWNLOADS

### Scroll to PRE-TRIAL ORDERS

**Select the appropriate pre-trial order/procedure for YOUR respective case and Judge.**

**If you are unable to access or unclear as to which pre-trial order/procedure applies to you, contact the Office of the Clerk of Courts, New Case Department (440.350.2657) during normal business hours and a copy will be immediately mailed to you.**

**Maureen G. Kelly, Clerk of Courts**
Revised 7/1/2013 Pretrial orders